Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

*Additional Counsel on Signature Page*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PIERRE SERGE BOLDUC, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STARZ, CHRISTOPHER P. ALBRECHT, SCOTT D. MACDONALD, and GREGORY B. MAFFEI,<br><br>Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Pierre Serge Bolduc ("Plaintiff"), by Plaintiff's undersigned attorneys, individually and on behalf of all other persons similarly situated, alleges the following based upon personal knowledge as to Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' public documents, conference calls and announcements made by

Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Starz (the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action brought on behalf of a class consisting of all persons and entities, other than Defendants (defined below) and their affiliates, who purchased or otherwise acquired the securities of Starz from August 1, 2014 to October 29, 2015, inclusive (the "Class Period"). Plaintiff seeks to pursue remedies against Starz and certain of its officers and directors for violations of federal securities laws.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

4. Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b), as Defendants conduct business in this District, has an office in this District, and a significant portion of the Defendants' actions and the subsequent damages, took place within this District.

5. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the attached Certification, acquired Starz securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7. Defendant Starz operates as a media and entertainment company. Starz is a Delaware corporation headquartered in Englewood, Colorado and maintains an office in Beverly Hills, Burbank, California. Its common stock trades on the NASDAQ under the ticker symbol "STRZA" and "STRZB."

8. Defendant Christopher P. Albrecht ("Albrecht") has served as the Company's Chief Executive Officer ("CEO") throughout the Class Period.

9. Defendant Scott D. Macdonald ("Macdonald") has served as the Company's Chief Financial Officer ("CFO"), Executive Vice President and Treasurer throughout the Class Period.

10. Defendant Gregory B. Maffei ("Maffei") has served as the Company's Chairman of the Board and Director throughout the Class Period.

11. The defendants referenced above in ¶¶ 8 – 10 are sometimes referred to herein as the "Individual Defendants."

12. Defendant Starz and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

13. Starz is purportedly a leading integrated global media and entertainment company. The Company provides premium subscription video programming to U.S. multichannel video programming distributors, including cable operators, satellite television providers and telecommunications companies. The Company also

develops, produces and acquires entertainment content and distributes this content to consumers in the U.S. and throughout the world.

## **Materially False And Misleading Statements**

14. On July 31, 2014, the Company filed a quarterly report on Form 10-Q with the SEC for the quarter ended June 30, 2014 (the "Q2 2014 10-Q"), which was signed by Defendants Albrecht and Macdonald. The Q2 2014 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Albrecht and Macdonald stating that the financial information contained in the Q2 2014 10-Q was accurate, all fraud was disclosed and any material changes to the Company's internal control over financial reporting were disclosed.

15. The Q2 2014 10-Q stated the following with regards to the Company's controls and procedures:

> **Item 4. Controls and Procedures**
>
> ***Disclosure Controls and Procedures***
>
> In accordance with Rules 13a-15 and 15d-15 under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), we carried out an evaluation, under the supervision and with the participation of management, including our chief executive officer and our principal financial and accounting officer (the "Executives"), of the effectiveness of our disclosure controls and procedures as of the end of the period covered by this report. Based on that evaluation, the Executives concluded that our disclosure controls and procedures were effective as of June 30, 2014 to provide reasonable assurance that information required to be disclosed in our reports filed or submitted under the Exchange Act are recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms.
>
> There has been no change in our internal control over financial reporting that occurred during the three months ended June 30, 2014 that has

> materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.

16. On October 30, 2014, the Company filed a quarterly report on Form 10-Q with the SEC for the quarter ended September 30, 2014 (the "Q3 2014 10-Q"), which was signed by Defendants Albrecht and Macdonald. The Q3 2014 10-Q contained signed SOX certifications by Defendants Albrecht and Macdonald stating that the financial information contained in the Q3 2014 10-Q was accurate, all fraud was disclosed and any material changes to the Company's internal control over financial reporting were disclosed.

17. The Q3 2014 10-Q stated the following with regards to the Company's controls and procedures:

> **Item 4. Controls and Procedures**
>
> ***Disclosure Controls and Procedures***
>
> In accordance with Rules 13a-15 and 15d-15 under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), we carried out an evaluation, under the supervision and with the participation of management, including our chief executive officer and our principal financial and accounting officer (the "Executives"), of the effectiveness of our disclosure controls and procedures as of the end of the period covered by this report. Based on that evaluation, the Executives concluded that our disclosure controls and procedures were effective as of September 30, 2014 to provide reasonable assurance that information required to be disclosed in our reports filed or submitted under the Exchange Act are recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms.
>
> There has been no change in our internal control over financial reporting that occurred during the three months ended September 30, 2014 that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.

18. On February 25, 2015, the Company filed a year end report on Form 10-K with the SEC for the fiscal year ended December 31, 2014 (the "2014 10-K"), which was signed by the Individual Defendants. The 2014 10-K contained signed SOX certifications by Defendants Albrecht and Macdonald stating that the financial information contained in the 2014 10-K was accurate, all fraud was disclosed and any material changes to the Company's internal control over financial reporting were disclosed.

19. The 2014 10-K stated the following with regards to the Company's controls and procedures:

> **Item 9A. Controls and Procedures**
>
> ***Disclosure Controls and Procedures***
>
> In accordance with Exchange Act Rules 13a-15 and 15d-15, we carried out an evaluation, under the supervision and with the participation of management, including our chief executive officer and our principal financial and accounting officer (the "Executives"), of the effectiveness of our disclosure controls and procedures as of the end of the period covered by this report. Based on that evaluation, the Executives concluded that our disclosure controls and procedures were effective as of December 31, 2014 to provide reasonable assurance that information required to be disclosed in our reports filed or submitted under the Exchange Act are recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms.
>
> **Internal Control over Financial Reporting**
>
> *Management's Report on Internal Control over Financial Reporting*
>
> Our management is responsible for establishing and maintaining adequate internal control over our financial reporting. Our internal control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of the consolidated financial statements and related

disclosures in accordance with generally accepted accounting principles. Our internal control over financial reporting includes those policies and procedures that (1) pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions of our company; (2) provide reasonable assurance that transactions are recorded as necessary to permit preparation of the consolidated financial statements and related disclosures in accordance with generally accepted accounting principles; (3) provide reasonable assurance that receipts and expenditures of our company are being made only in accordance with authorizations of management and directors of our company; and (4) provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use, or disposition of our assets that could have a material effect on the consolidated financial statements and related disclosures.

Because of inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Also, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies and procedures may deteriorate.

We assessed the design and effectiveness of internal control over financial reporting as of December 31, 2014. In making this assessment, management used the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO") in Internal Control-Integrated Framework (1992). On May 14, 2013, COSO issued an updated version of its Internal Control - Integrated Framework ("2013 Framework"). Originally issued in 1992 ("1992 Framework"), both frameworks provide principles-based guidance for designing and implementing effective internal controls. As of December 31, 2014, we continue to utilize the 1992 Framework. We expect to adopt the 2013 Framework during the fiscal year ending December 31, 2015.

Based upon our assessment using the criteria contained in COSO, management has concluded that, as of December 31, 2014, our internal control over financial reporting is effectively designed and operating effectively.

> Our independent registered public accounting firm audited the consolidated financial statements and related disclosures in the Annual Report on Form 10-K and have issued an audit report on the effectiveness of our internal control over financial reporting. This report appears on page F-2 of this Annual Report on Form 10-K.
>
> *Changes in Internal Control over Financial Reporting*
>
> There has been no change in our internal control over financial reporting that occurred during the three months ended December 31, 2014 that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.

20. On April 30, 2015, the Company filed a quarterly report on Form 10-Q with the SEC for the quarter ended March 31, 2015 (the "Q1 2015 10-Q"), which was signed by Defendants Albrecht and Macdonald. The Q1 2015 10-Q contained signed SOX certifications by Defendants Albrecht and Macdonald stating that the financial information contained in the Q1 2015 10-Q was accurate, all fraud was disclosed and any material changes to the Company's internal control over financial reporting were disclosed.

21. The Q1 2015 10-Q stated the following with regards to the Company's controls and procedures:

> **Item 4. Controls and Procedures**
>
> ***Disclosure Controls and Procedures***
>
> In accordance with Rules 13a-15 and 15d-15 under the Securities Exchange Act of 1934, as amended ("Exchange Act"), we carried out an evaluation, under the supervision and with the participation of management, including our chief executive officer and our principal financial and accounting officer ("Executives"), of the effectiveness of our disclosure controls and procedures as of the end of the period covered by this report. Based on that evaluation, the Executives concluded that our disclosure controls and procedures were effective as of March 31, 2015 to provide reasonable assurance that information

> required to be disclosed in our reports filed or submitted under the Exchange Act are recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms.
>
> There has been no change in our internal control over financial reporting that occurred during the three months ended March 31, 2015 that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.

22. On July 29, 2015, the Company filed a quarterly report on Form 10-Q with the SEC for the quarter ended June 30, 2015 (the "Q2 2015 10-Q"), which was signed by Defendants Albrecht and Macdonald. The Q2 2015 10-Q contained signed SOX certifications by Defendants Albrecht and Macdonald stating that the financial information contained in the Q2 2015 10-Q was accurate, all fraud was disclosed and any material changes to the Company's internal control over financial reporting were disclosed.

23. The Q2 2015 10-Q stated the following with regards to the Company's controls and procedures:

> **Item 4. Controls and Procedures**
>
> ***Disclosure Controls and Procedures***
>
> In accordance with Rules 13a-15 and 15d-15 under the Securities Exchange Act of 1934, as amended ("Exchange Act"), we carried out an evaluation, under the supervision and with the participation of management, including our chief executive officer and our principal financial and accounting officer ("Executives"), of the effectiveness of our disclosure controls and procedures as of the end of the period covered by this report. Based on that evaluation, the Executives concluded that our disclosure controls and procedures were effective as of June 30, 2015 to provide reasonable assurance that information required to be disclosed in our reports filed or submitted under the Exchange Act are recorded, processed, summarized and reported within

> the time periods specified in the Securities and Exchange Commission's rules and forms.
>
> There has been no change in our internal control over financial reporting that occurred during the three months ended June 30, 2015 that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.

24. On October 29, 2015, the Company filed a quarterly report on Form 10-Q with the SEC for the quarter ended September 30, 2015 (the "Q3 2015 10-Q"), which was signed by Defendants Albrecht and Macdonald. The Q3 2015 10-Q contained signed SOX certifications by Defendants Albrecht and Macdonald stating that the financial information contained in the Q3 2015 10-Q was accurate, all fraud was disclosed and any material changes to the Company's internal control over financial reporting were disclosed.

25. The Q3 2015 10-Q stated the following with regards to the Company's controls and procedures:

> **Item 4. Controls and Procedures**
>
> ***<u>Disclosure Controls and Procedures</u>***
>
> In accordance with Rules 13a-15 and 15d-15 under the Securities Exchange Act of 1934, as amended ("Exchange Act"), we carried out an evaluation, under the supervision and with the participation of management, including our chief executive officer and our principal financial and accounting officer ("Executives"), of the effectiveness of our disclosure controls and procedures as of the end of the period covered by this report. Based on that evaluation, the Executives concluded that our disclosure controls and procedures were effective as of September 30, 2015 to provide reasonable assurance that information required to be disclosed in our reports filed or submitted under the Exchange Act are recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms.

> There has been no change in our internal control over financial reporting that occurred during the three months ended September 30, 2015 that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.

26. The statements referenced in ¶¶ 14-25 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company lacked adequate internal controls; (2) the Company's contract with Comcast Corporation was a result of illicit business practices; and (3) as a result, the Company's public statements were materially false and misleading and/or lacked a reasonable basis at all relevant times.

**The Truth Emerges**

27. On October 29, 2015, online magazine Deadline Hollywood revealed that the Company's former Senior Vice President of Sales and Affiliate Marketing Keno Thomas ("Thomas") filed a lawsuit against the Company and several of its subsidiaries, Defendant Albrecht, the Company's Chief Revenue Officer Michael Thornton ("Thorton") and Liberty Media Corp. (the "Thomas Action").

28. The Thomas Action alleges, among other things, that:

- The contract between Comcast Corporation and the Company that was entered into on or about April 2014 was the result of illicit business practices committed by Thorton and Defendant Maffei.
- As the Senior Vice President of Sales and Affiliate Marketing for the Company, Thomas was ordered by the Company's senior management, at the behest of Thornton, to fabricate revenue and subscriber information so that Thornton and Defendant Albrecht could present

those falsified figures to the Company's Board of Directors, which would allow them to have plausible deniability in case the Board realized the revenue figures were fabricated.

- The Company retaliated against Thomas for refusing to fabricate revenue and subscriber information.

29. On this news, shares of STRZA fell $3.69 per share or over 9% from its previous closing price to close at $33.51 per share on October 30, 2015, and shares of STRZB fell $4.98 per share or over 13% to close at $32.73 per share on October 30, 2015, damaging investors.

30. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

31. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Starz securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

32. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Starz securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by

Starz or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

33. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

34. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

35. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Starz;
- whether the Individual Defendants caused Starz to issue false and misleading financial statements during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;
- whether the prices of Starz securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

36. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is

impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

37. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- the omissions and misrepresentations were material;
- Starz securities are traded in an efficient market;
- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;
- the Company traded on the NASDAQ and was covered by multiple analysts;
- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and
- Plaintiff and members of the Class purchased, acquired and/or sold Starz securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

38. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

39. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

## Violations of Section 10(b) of The Exchange Act and Rule 10b-5 Against All Defendants

40. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

41. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

42. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Starz securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Starz securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

43. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Starz securities. Such reports,

filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Starz's disclosure controls and procedures.

44. By virtue of their positions at Starz, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

45. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Starz, the Individual Defendants had knowledge of the details of Starz's internal affairs.

46. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Starz. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Starz's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Starz securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Starz's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise

acquired Starz securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

47. During the Class Period, Starz securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Starz securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Starz securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Starz securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

48. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

49. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

## Violations of Section 20(a) of The Exchange Act Against The Individual Defendants

50. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51. During the Class Period, the Individual Defendants participated in the operation and management of Starz, and conducted and participated, directly and indirectly, in the conduct of Starz's business affairs. Because of their senior positions, they knew the adverse non-public information about Starz's operations, current financial position and future business prospects.

52. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Starz's business practices, and to correct promptly any public statements issued by Starz which had become materially false or misleading.

53. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Starz disseminated in the marketplace during the Class Period concerning the Company's disclosure controls and procedures. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Starz to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Starz within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Starz securities.

54. Each of the Individual Defendants, therefore, acted as a controlling person of Starz. By reason of their senior management positions and/or being directors of Starz, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Starz to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Starz and possessed the power to control the specific

activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

55. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Starz.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as her reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: November 9, 2015

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Laurence M. Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684

Email: lrosen@rosenlegal.com

Michael Goldberg, Esq. (SBN 188689)
Goldberg Law PC
13650 Marina Pointe Dr. Suite 1404
Marina Del Rey, CA 90292
Phone: 1-800-977-7401
Fax: 1-800-536-0065

*Counsel for Plaintiff*